# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

**ROGERS ELECTRIC SERVICE CORPORATION, d/b/a Rogers Electric,**

    **Plaintiff,**

    **v.**

**CVS PHARMACY, INC.,**

    **Defendant.**

1:17-cv-1555-WSD

## OPINION AND ORDER

This matter is before the Court on Plaintiff Rogers Electric Service Corporation's ("Plaintiff") Motion for Leave to File Motion to Remand [12] and Motion to Stay Discovery and All Deadlines Pending Ruling on Remand [13] ("Motion to Stay").

## I. BACKGROUND

Plaintiff alleges that, since August 1, 2006, it has provided "electrical and lighting maintenance and repair services" to "literally hundreds" of Defendant CVS Pharmacy, Inc.'s ("Defendant") retail locations throughout the United States. (Compl. ¶ 6). In 2014, the parties entered into their Master Service Agreement ("2014 Agreement"), effective April 1, 2014, through March 31, 2017. (Compl.

¶ 7). The 2014 Agreement authorized Defendant "to audit any and all business and operations practices and procedures of [Plaintiff] as they pertain to this Agreement, including, but not limited to, billing practices and procedures." (Compl. ¶ 8). The 2014 Agreement also granted Defendant "the right to verify/audit that all service levels agreed to in this Agreement are being met via use of an outside audit company." (Compl. ¶ 8).

In 2015, the parties entered into their Purchase and Service Agreement ("2015 Agreement"), effective March 1, 2015, through December 31, 2017. (Compl. ¶ 9). The 2015 Agreement included the same auditing provisions as the 2014 Agreement, and "supersede[d]" the 2014 Agreement "in its entirety." (Compl. ¶¶ 9-10).

On February 6, 2016, Defendant notified Plaintiff that, under the 2015 Agreement, it intended to audit Plaintiff within the next 90 business days. ([1.1] at 42). Defendant stated that Connolly LLC, an outside auditing firm, would conduct the audit. ([1.1] at 42). Plaintiff "sought assurances from [Defendant] that the audit would be restricted to the time period covered by the 2015 [Agreement] and that Connolly would not be permitted to audit [Plaintiff's] billing practices and procedures as only [Defendant] is permitted to do so under the 2015 [Agreement]." (Compl. ¶ 13). Defendant declined to provide these assurances, "ceased providing

2

any new work to [Plaintiff]," and constructively terminated its relationship with Plaintiff. (Compl. ¶¶ 14-15).

On March 29, 2017, Plaintiff filed its Complaint ([1.1] at 4-11) in the Superior Court of Gwinnett County, Georgia. Count 1 asserts a breach of contract claim, for which Plaintiff seeks $22,892.61 in damages, on the grounds that Defendant failed to pay Plaintiff "for work performed and materials supplied." (Compl. ¶ 27). Count 2 seeks a declaratory judgment that Defendant is not entitled to audit Plaintiff under the 2014 and 2015 Agreements or, alternatively, that "any audit conducted pursuant to the 2015 [Agreement] may only include services and billings from March 31, 2015 through the present and that any audit relating to billing practices and procedures may only be conducted by [Defendant] and not any outside third-party audit company." (Compl. at 8).

On May 1, 2017, Defendant filed its Notice of Removal [1] (the "Notice") to this Court on the basis of diversity jurisdiction. The Notice alleges that the parties are citizens of different states and that the combined value of Plaintiff's requests for damages and declaratory relief exceeds $75,000. On May 23, 2017, Defendant filed its Answer and Counterclaim [3], asserting counterclaims for breach of contract and specific performance on the grounds that Plaintiff failed to submit to an audit required under the 2014 and 2015 Agreements. On June 13, 2017,

Plaintiff filed its Answer [4], asserting that the Court lacks subject matter jurisdiction because the amount in controversy does not exceed $75,000. On June 22, 2017, Plaintiff again asserted, in the parties' Joint Preliminary Report and Discovery Plan [6], that the Court lacks subject matter jurisdiction over this action. On June 27, 2017, the Court approved the parties' Joint Preliminary Report and Discovery Plan, and ordered Plaintiff to file, on or before July 14, 2017, its motion to remand this action to state court. ([8]). On August 9, 2017, Plaintiff filed its Motion for Leave to File Motion to Remand, attaching its proposed motion to remand and supporting memorandum of law.[1] On August 14, 2017, Plaintiff filed its Motion to Stay, seeking to stay this action "pending the Court's determination whether this case must be remanded to the Superior Court of Gwinnett County, Georgia whether pursuant to Plaintiff's prior motions or *sua sponte*." ([13] at 1). Defendant opposes Plaintiff's motions, arguing that "[t]he basis for the Court's diversity jurisdiction in this matter is set forth in detail in Defendant's Notice of Removal." ([14] at 5).

---

[1] Plaintiff's counsel claims he did not move to remand this action by the Court's July 14, 2017, deadline because, due to email difficulties, he first became aware of the Court's June 27, 2017, Order on July 25, 2017. ([12.3] at 2).

## II. DISCUSSION

### A. Legal Standard

Federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." Arbaugh v. Y&H Corp., 546 U.S. 500, 501 (2006). The Eleventh Circuit consistently has held that "a court should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings. Indeed, it is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 410 (11th Cir. 1999). "In light of the federalism and separation of powers concerns implicated by diversity jurisdiction, federal courts are obligated to strictly construe the statutory grant of diversity jurisdiction [and] to scrupulously confine their own jurisdiction to the precise limits which the statute has defined." Morrison v. Allstate Indem. Co., 228 F.3d 1255, 1268 (11th Cir. 2000). "[T]here is a presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand." Russell Corp. v. Am. Home Assur. Co., 264 F.3d 1040, 1050 (11th Cir. 2001); see City of Vestavia Hills v. Gen. Fid. Ins. Co., 676 F.3d 1310, 1313 (11th Cir. 2012) "[A]ll doubts about jurisdiction should be resolved in favor of remand to state

court."); Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994) ("[U]ncertainties are resolved in favor of remand."). "An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise." 28 U.S.C. § 1447(d).

Defendant asserts that the Court has diversity jurisdiction under 28 U.S.C. § 1332. Diversity jurisdiction exists where the amount in controversy exceeds $75,000 and the suit is between citizens of different states. 28 U.S.C § 1332(a). "The existence of federal jurisdiction is tested at the time of removal," Adventure Outdoors, Inc. v. Bloomberg, 552 F.3d 1290, 1294-95 (11th Cir. 2008), and the burden of establishing diversity jurisdiction "rests with the defendant seeking removal," Scimone v. Carnival Corp., 720 F.3d 876, 882 (11th Cir. 2013); City of Vestavia Hills v. Gen. Fidelity Ins. Co., 676 F.3d 1310, 1313 n.1 (11th Cir. 2012) ("The removing party bears the burden of proof regarding the existence of federal subject matter jurisdiction.").

B.   Analysis

Where, as here, "jurisdiction is premised on the diversity of the parties, the court is obligated to assure itself that the case involves the requisite amount in controversy." Morrison v. Allstate Indem. Co., 228 F.3d 1255, 1261 (11th Cir. 2000). Plaintiff's Complaint includes a breach of contract claim, for which

6

Plaintiff seeks $22,892.61 in damages, and a request for declaratory judgment that Defendant is not entitled to audit Plaintiff under the 2014 and 2015 Agreements. "[T]he value of the damages claim[] must be aggregated with that of the declaratory judgment claim to determine the total amount in controversy for § 1332 purposes." Hardy v. Jim Walter Homes, Inc., No. 06-CV-0687, 2007 WL 1889896, at *4 (S.D. Ala. June 28, 2007). "[T]he value of the requested [declaratory] relief is the monetary value of the benefit that would flow to the plaintiff if the [declaration] were granted." Morrison v. Allstate Indem. Co., 228 F.3d 1255, 1268 (11th Cir. 2000). Defendant is required to prove, by a preponderance of the evidence, that the combined value of Plaintiff's requests for damages and declaratory relief exceed $75,000. See Hardy, Inc., 2007 WL 1889896, at *5; see also Williams v. Best Buy Co., 269 F.3d 1316, 1319 (11th Cir. 2001) ("Where, as here, the plaintiff has not pled a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement.").

Defendant has not met its burden to show by a preponderance of the evidence that Plaintiff's declaratory relief claim has a value of at least $52,107.40, the amount required to meet the amount-in-controversy requirement under Section 1332 when Plaintiff's request for $22,892.61 in contract damages is

7

credited to the amount in controversy. Plaintiff seeks a declaratory judgment that Defendant is not entitled to audit Plaintiff under the 2014 or 2015 Agreements. Both agreements provide that "all costs and expenses incurred by [Defendant] for such an audit will be paid by [Defendant], unless the inspection discloses errors or omissions of more than five percent (5%) of the invoiced amount in [Plaintiff's] favor in which case the costs and expenses will be paid by [Plaintiff]." ([1.1] at 19, 32). Plaintiff thus is required to pay for the audit only if it reveals a sufficiently high error rate in Plaintiff's practices. Defendant's Notice alleges that "[t]he costs and expenses of the audit are estimated to be no less than approximately $66,000," and that Defendant's "internal and informal audit suggests that [Plaintiff] has overcharged [Defendant] by at least $330,000." ([1] at 5). Defendant does not elaborate on, or provide any evidence in support of, these allegations, and it certainly does not present sufficient evidence to establish the amount in controversy by a preponderance of the evidence. Defendant's failure to offer evidence of the monetary value of Plaintiff's declaratory relief claim is fatal to the Court's subject matter jurisdiction. See Vulcan Steel Structures, Inc. v. Murphy, No. 7:15-CV-109-WLS, 2015 WL 13413348, at *2 (M.D. Ga. Aug. 4, 2015) ("The removing party has the burden to prove facts supporting jurisdiction by a preponderance of the evidence."); Givens v. Publix Super Markets, Inc., No. 1:13-

8

CV-16-WLS, 2013 WL 4518133, at *3 (M.D. Ga. Aug. 26, 2013) ("[T]his Court is not permitted to speculate as to the amount in controversy without the benefit of evidence in support thereof. Since Defendant has offered no evidence that the amount in controversy exceeds $75,000, Defendant has failed to meet its burden to prove same by a preponderance of the evidence."); see also Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 752 (11th Cir. 2010) ("[I]t would be impermissible speculation for a court to hazard a guess on the jurisdictional amount in controversy without the benefit of any evidence on the value of [plaintiffs'] claims."); Lowery v. Alabama Power Co., 483 F.3d 1184, 1214-15 (11th Cir. 2007) ("If [defendant's] evidence is insufficient to establish that removal was proper or that jurisdiction was present, neither the defendants nor the court may speculate in an attempt to make up for the notice's failings.").

The Court also finds that the monetary value of Plaintiff's requested declaratory relief is "too speculative . . . to be included in determining the amount in controversy." Morrison v. Allstate Indem. Co., 228 F.3d 1255, 1270 (11th Cir. 2000); see Cohen v. Office Depot, Inc., 204 F.3d 1069, 1079 (11th Cir. 2000) (finding "the claim for injunctive relief too speculative to satisfy the amount in controversy requirement" and "too tenuous of a foundation for diversity jurisdiction"). Plaintiff derives monetary value from its requested declaratory

9

relief only if a future audit, of undefined scope, would reveal overcharges or "disclose[] errors or omissions of more than five percent (5%) of the invoiced amount in [Plaintiff's] favor." ([1.1] at 19, 32). Even assuming these conditions were met, the exact value of Plaintiff's declaratory relief depends on the specific overcharges or errors revealed by the audit, the cost of the audit, and the invoiced amount subject to the audit, all of which are currently unknown or contingent on future events. "Diversity jurisdiction cannot be founded on contingencies or speculation about what may or may not happen in the future." Mann v. Unum Life Ins. Co. of Am., No. 8:12-CV-1343, 2012 WL 12897381, at *3 (M.D. Fla. Oct. 3, 2012), aff'd, 505 F. App'x 854 (11th Cir. 2013); see Cohen, 204 F.3d at 1079 (finding that "the injunctive relief in this case involves too many contingencies" to be included in determining the amount in controversy); Hardy, 2007 WL 1889896, at *5 ("Courts have cautioned . . . that if the value of the relief to the plaintiff is speculative or immeasurable, then it cannot satisfy the amount in controversy requirement as a matter of law.").[2] Defendant has not established that the amount

---

[2] See also Vicksburg, S. & P. Ry. Co. v. Nattin, 58 F.2d 979, 980 (5th Cir. 1932) ("Jurisdiction is based on actuality, not prophecy, the pressure of a grievance immediately felt and presently measureable in money of the jurisdictional amount. Speculative anticipation that conditions, from which present ills, not now sufficient in amount to give jurisdiction, flow, may in time aggregate the necessary amount, will not support jurisdiction.").

10

in controversy exceeds $75,000, and this action is remanded to the Superior Court of Gwinnett County, Georgia. See Newman v. Spectrum Stores, Inc., 109 F. Supp. 2d 1342, 1345 (M.D. Ala. 2000) ("Because federal court jurisdiction is limited, the Eleventh Circuit favors remand of removed cases where federal jurisdiction is not absolutely clear."). Because this action is remanded to state court for lack of subject matter jurisdiction, Plaintiff's pending motions are denied as moot.

### III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that this action is **REMANDED** to the Superior Court of Gwinnett County, Georgia.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File Motion to Remand [12] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Stay Discovery and All Deadlines Pending Ruling on Remand [13] is **DENIED AS MOOT**.

**SO ORDERED** this 19th day of September, 2017.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE